UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:21-cv-62479-JEM

**JENNIFER ZUNIGA**,
individually and on behalf of all
others similarly situated,

      Plaintiff,

v.

**SPARC GROUP, LLC d/b/a
AEROPOSTALE**,

      Defendant.
_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**FIRST AMENDED CLASS ACTION COMPLAINT**[1]

Plaintiff Jennifer Zuniga brings this class action against Defendant SPARC Group, LLC d/b/a Aeropostale, and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is a class action pursuant to the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, as amended by Senate Bill No. 1120.[2]

2. Defendant is one of the largest shopping-mall based retailers in the country.

---

[1] Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff hereby amends her Complaint as a matter of course, thereby mooting Defendant's pending Motion to Dismiss, [DE 13].

[2] The amendment to the FTSA became effective on July 1, 2021.

3. To promote its goods, Defendant engages in unsolicited text messaging, including to those who have not provided Defendant with their prior express written consent as required by the FTSA.

4. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of consumers throughout Florida. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

## PARTIES

5. Plaintiff is a natural person who, at all times relevant to this action, was a citizen and permanent resident of the Broward County, Florida.

6. Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that he was the regular user of cellular telephone number that received Defendant's telephonic sales calls

7. Defendant is, and at all times relevant hereto was, a foreign corporation and a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).  Defendant maintains its primary place of business and headquarters in Lyndhurst, New Jersey.

## JURISDICTION AND VENUE

8. Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's contacts with this state. Defendant made or caused to be made telephonic sales calls into Florida without the requisite prior express written consent in violation of the FTSA. Plaintiff received such calls while residing in and physically present in Florida.

9. This court may have subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because at least one member of the putative class, including Plaintiff, is a citizen of Florida, and

Defendant is a citizen of New Jersey, thus CAFA's minimal diversity requirement is met. However, as outlined in Plaintiff's Motion to Remand, Plaintiff disputes that Defendant has met its burden to demonstrate that this action exceeds the $5,000,000 threshold for federal court jurisdiction under the Class Action Fairness Act. Plaintiff maintains that Defendant should be ordered to disclose the number of text messages it has caused to be sent to consumers in Florida, or the Court should remand the case.

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District, and because Plaintiff was injured in this District and received Defendant's solicitations in this District.

**FACTS**

11. Commencing on or about September 13, 2021, Defendant sent the following telephonic sales calls to Plaintiff's cellular telephone number:



3



> 49823

> Aero: Hey there, Aero fam. Prep for the year ahead with our incoming class of varsity-inspired styles. Shop now & save big. XOXO Aero: https://aeropostale.attn.tv/l/xq7/QEYq5

Fri, Oct 1, 1:22 PM

> Aero: Fall Sale STARTS NOW! Take 50-70% OFF + shop new clearance styles $9.99 & under! https://aeropostale.attn.tv/l/CLK/QEYq5

Mon, Oct 4, 1:12 PM

> Aero: ICYMI: our graphics are going fast. Buy 1 tee, get 2 FREE! https://aeropostale.attn.tv/l/s68/QEYq5

Thu, Oct 7, 1:18 PM

> Aero: Loungewear made for living. Shop ultra-soft and easy styles that take you from on-the-couch to on-the-go in under 60 seconds https://aeropostale.attn.tv/l/epq/QEYq5

Tue, Oct 12, 1:16 PM

5

49823

Tue, Oct 12, 1:16 PM

Aero: STARTS NOW: select jeans $19.99 + 60% off sitewide! Srsly, this is a big deal. Shop now https://aeropostale.attn.tv/l/Elj/QEYq5

Fri, Oct 15, 1:17 PM

Aero: ICYMI: our graphics are going fast. Buy 1 tee, get 2 FREE! https://aeropostale.attn.tv/l/jcT/QEYq5

Mon, Oct 18, 1:30 PM

Aero: Happy International Leggings Day! We dropped new styles to celebrate. Shop now: https://aeropostale.attn.tv/l/hCH/QEYq5

Thu, Oct 21, 1:23 PM

Aero: New cozy now in & 50-70% OFF! Our (early) gift to you. Shop now: https://aeropostale.attn.tv/l/q3r/QEYq5

Sun, Oct 24, 1:21 PM

6

> 49823 >
>
> Sun, Oct 24, 1:21 PM
>
> Aero: Our most giftable jeans: buy 1, gift 1 free + free shipping! Shop now: https://aeropostale.attn.tv/l/eE2/QEYq5
>
> Thu, Oct 28, 1:11 PM
>
> Aero: New jackets just dropped. Warm up to chilly weather with 50-70% off! Shop now: https://aeropostale.attn.tv/l/OZC/QEYq5
>
> Sun, Oct 31, 1:19 PM
>
> Aero: Happy Halloween! Treat yourself to these bone-a-fide chilly-weather staples. Shop now: https://aeropostale.attn.tv/l/3V7/QEYq5
>
> Wednesday 1:24 PM
>
> Aero: Holiday Mode: Activated. Enjoy 50-70% Off Sitewide! Including Gifts That Never Miss. Shop Now: https://aeropostale.attn.tv/l/1If/QEYq5

12. As demonstrated by the above screenshots, the purpose of Defendant's telephonic sales calls was to solicit the sale of consumer goods and/or services.

13. Plaintiff was in Florida when she received the above text message calls, and Defendant's violative conduct occurred in substantial part in Florida.

14. Plaintiff's cellular telephone number has an area code that corresponds with geographic locations in Florida. Accordingly, Defendant knew or should have known that it was sending text messages to an individual located in Florida.

7

15. At the time Plaintiff received the text messages, she was the subscriber and sole user of the cellular telephone that received the messages.

16. To transmit the above telephonic sales text message calls, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers.

17. In fact, on its website, Defendant states that it utilizes an "**automated system**" to transmit text messages to consumers. *See* www.aeropostale.com/mobile-alerts-policy.html (emphasis supplied).

18. The number used by Defendant to transmit the subject text message solicitations (49823) is known as a "short code." Short codes are short digit sequences, shorter than telephone numbers, that are used to address messages in the Multimedia Messaging System and short message service systems of mobile network operators.

19. Text messages using a short code can only be sent using a computer, and cannot be sent using a standard telephone.

20. The impersonal and generic nature of Defendant's text messages, coupled with their frequency, and the fact that they originated from a short-code, demonstrates that Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers.

21. Indeed, to send the text message, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of thousands of text messages automatically and without any human involvement.

22. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

23. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

24. Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

25. Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

26. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

27. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

28. Compliance with the FTSA will not result in Defendant having to cease its business operations.

29. Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

30. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

31. Because a substantial part of Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

32. The Platform has the capacity to select and dial numbers automatically from a list of numbers.

33. The Platform has the capacity to schedule the time and date for future transmission of text messages.

34. The Platform also has an auto-reply function that results in the automatic transmission of text messages.

35. Plaintiff never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection or dialing of telephone numbers.

36. More specifically, Plaintiff never signed any type of authorization permitting or allowing the placement of a telephonic sales call by text message using an automated system for the selection or dialing of telephone numbers.

37. Since July 1, 2021, Defendant sent at least 50 text message solicitations to as many consumers in Florida.

38. Defendant's unsolicited text messages caused Plaintiff harm, including invasion of privacy, aggravation, and annoyance. Defendant's call also inconvenienced Plaintiff, caused disruptions to Plaintiff's daily life, caused Plaintiff to waste time dealing with Defendant's unsolicited text message calls. Additionally, Defendant's unsolicited messages violated Plaintiff's substantive rights under the FTSA from be free from harassing calls like Defendant's.

# CLASS ALLEGATIONS

### PROPOSED CLASS

39.  Plaintiff brings this lawsuit as a class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent the following Class:

> **All persons in Florida who, (1) were sent a telephonic sales call regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff.**

40.  Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

41.  Defendant and its employees or agents are excluded from the Class.

### NUMEROSITY

42.  Since July 1, 2021, Defendant sent at least 50 telephonic text message solicitations to as many consumers in Florida. The members of the Class, therefore, are so numerous that joinder of all members is impracticable.

43.  Identification of the Class members is a matter capable of ministerial determination from Defendant's text messaging records.

### COMMON QUESTIONS OF LAW AND FACT

44.  There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members. Among the questions of law and fact common to the members of the Class are:

   a) Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members;

   b) Whether Defendant can meet its burden of showing that it had prior express written

consent to make such calls;

c) Whether Defendant's conduct was knowing and willful;

d) Whether Defendant is liable for damages, and the amount of such damages; and

e) Whether Defendant should be enjoined from such conduct in the future.

45. The common questions in this case are capable of having common answers. Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

46. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

47. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

48. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

49.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violation of the FTSA, Fla. Stat. § 501.059**
**(On Behalf of Plaintiff and the Class)**

50.     Plaintiff re-alleges and incorporates the allegations of paragraphs 1-49 as if fully set forth herein.

51.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

52.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

53.     "Prior express written consent" means an agreement in writing that:

1. Bears the signature of the called party;

2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

13

    3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

    4. Includes a clear and conspicuous disclosure informing the called party that:

        a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

        b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

54. Defendant failed to secure prior express written consent from Plaintiff and the Class members.

55. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

56. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

57. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of actual and statutory damages for Plaintiff and each member of the Class;

c) An award of statutory damages for Plaintiff and each member of the Class under the FTSA;

d) An order declaring that Defendant's actions, as set out above, violate the FTSA;

e) An injunction requiring Defendant to cease all unsolicited call activity, and to otherwise protect the interests of the Class; and

f) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.

Dated: January 13, 2022

Respectfully submitted,

By: **HIRALDO P.A.**

/s/ *Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 East Las Olas Boulevard
Suite 1400
Ft. Lauderdale, FL 33301
mhiraldo@hiraldolaw.com